IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

DARROW TOWNSEND,                     )      CASE NO. 1:12CV2982
                                     )
            Plaintiff,               )
                                     )
      v.                             )      MAGISTRATE JUDGE
                                     )      KATHLEEN B. BURKE
COMMISSIONER OF SOCIAL,              )
SECURITY ADMINISTRATION,[1]          )
                                     )      **MEMORANDUM OPINION & ORDER**
            Defendant.               )


      Plaintiff Darrow Townsend ("Plaintiff" or "Townsend") seeks judicial review of the final

decision of Defendant Commissioner of Social Security ("Commissioner") denying his

application for supplemental social security income ("SSI").  Doc. 1.  This Court has jurisdiction

pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned Magistrate Judge pursuant to

the consent of the parties.  Doc. 14.

      For the reasons stated below, the Commissioner's decision is **AFFIRMED**.


## I.  Procedural History

      Townsend filed his application for SSI on August 17, 2009,[2] alleging a disability onset

date of October 1, 2008.  Tr. 141.  He alleged disability based on shoulder problems and learning

disability.  Tr. 187.  After denials by the state agency initially and on reconsideration (Tr. 79-81,

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to FED. R.
CIV. P. 25(d), she is hereby substituted for Michael J. Astrue as the Defendant in this case.

[2] The ALJ's decision and the Disability Determination and Transmittal notice indicate that Townsend filed his SSI
Application on August 17, 2009.  Tr. 21, 74.  Townsend's Summary Application indicates that he filed his SSI
application on August 21, 2009.  Tr. 141.  The Court will accept the earlier of the two dates as there is some
evidence that there may be a protective filing in this case.  Doc. 16, p. 1.  The actual filing date is not at issue at this
time.

87-89), Townsend requested a hearing.  Tr. 91.   A hearing was held before Administrative Law

Judge  ("ALJ") Pamela E. Loesel on June 14, 2011.  Tr. 39-72.

In her August 22, 2011, decision, the ALJ determined that Plaintiff's residual functional

capacity ("RFC") did not prevent him from performing work existing in significant numbers in

the national economy, i.e., he was not disabled.  Tr. 18-38.  Townsend requested review of the

ALJ's decision by the Appeals Council. Tr. 15.  On November 15, 2012, the Appeals Council

denied Townsend's request for review, making the ALJ's decision the final decision of the

Commissioner.  Tr. 1-3.


## II. Evidence

### A.  Personal and Vocational Evidence

At the time of the hearing, Townsend was a 24 year old male.  Tr. 141.   The ALJ

determined that Townsend has unskilled past relevant work as a hand packager.  Tr. 31.

### B.  Medical Evidence – Physical Health

On November 27, 2007, Dr. Kimberly Togliatti-Tricket, M.D., performed a physical

consultative examination.  Tr. 229-235.  She opined that Townsend was capable of performing

sitting, standing, and walking without restriction and found him able to lift and carry at least 40-

50 pounds.  Id.  Between February 2008 and November 28, 2010, Townsend was seen in the

emergency room on multiple occasions for a right shoulder dislocation.  Tr. 246, 286-292, 297-

300, 578-589.

On September 9, 2008, Dr. Willa Caldwell, M.D., reviewed the evidence on behalf of the

State agency and opined that Townsend had the capacity to perform a full range of medium

work.  Tr. 28.  On November 14, 2009, Dr. Wilfredo Paras M.D. conducted a physical

consultative examination.  Tr. 311-317.  Dr. Paras diagnosed Mr. Townsend with a history of chronic right shoulder joint pain/right shoulder joint dislocation, without cervical intervention, and a history of learning disability disorder. Id.  On exam, Townsend's right shoulder showed weakness and reduced range of motion.  Id.  On December 21, 2009, Dr. Esberdado Villanueva, M.D., reviewed the evidence for the State agency and opined that Townsend could perform medium work but indicated Townsend could never climb ladders, ropes, and scaffolds, and could only occasionally lift overhead with his right upper extremity.  Tr. 318-325.  Dr. C. Jones, M.D., also reviewed the evidence on behalf of the State agency and opined that Townsend could perform light work except that he can frequently climb ramps and stairs, balance, stoop, kneel, and crawl, occasionally crouch but never climb ladders, ropes, and scaffolds.  Tr. 375-383.  Dr. Jones further opined that Townsend can occasionally reach in all directions with his right extremity and needs to avoid concentrated exposure to cold and hazards.  Id.

### C.  Medical Evidence – Mental Health

On December 10, 2007, Mitchell Wax, Ph.D., performed a psychological consultative examination, pursuant to a prior SSI application.  Tr. 236-242.   Dr. Wax stated that Townsend denied any history of psychiatric hospitalizations, psychiatric care, counseling, or medication.  Tr. 236-237.  Dr. Wax conducted a Weschler Adult Intelligence ("WAIS-III") test and a Wide Range Achievement Test ("WRAT-4").  Tr. 239-240.  Dr. Wax opined that Townsend's cognitive functioning was of someone operating in the low average to average range of intelligence.  Tr. 238.  Dr. Wax stated his opinion of Townsend's cognitive function was higher than Townsend's WAIS-III score but he stated that Townsend's WAIS-III scores and his WRAT score were suspect because he did not try his hardest on the test and Dr. Wax suspect malingering.  Tr. 240-41.  Dr. Wax suspected Townsend has a learning disorder. Tr. 240.

On January 21, 2010, Townsend underwent an initial psychological evaluation with Catholic Charities therapist Laura Diffendal in which he stated that he experienced hallucinations, and had difficulty sleeping and going out in public.  Tr. 509.  He was diagnosed with paranoid schizophrenia and dysthymic disorder.  Tr. 599.  Two weeks later, Ms. Diffendal completed a Mental Status Questionnaire ("MSQ") and a Daily Activities Questionnaire ("DAQ").  Tr. 391-393, 398-399.  In the MSQ, Ms. Diffendal stated that Townsend had flat affect, paranoid thinking, and difficulties with long and short term memory.  Tr. 391.  She also stated that Townsend can feel threatened easily.  Tr. 391.   Ms. Diffendal opined that Townsend was limited in his ability to remember, understand, follow directions, and maintain attention.  Tr. 392.  She found him unable to adapt due to paranoid thinking.  Tr. 392.  In the DAQ, Ms. Diffendal stated that Townsend interacts with his family but does not interact outside his family.  Tr. 398.  Ms. Diffendal also stated that Townsend cannot read or write and has impulsive and aggressive outbursts.  Tr. 398.  She stated that Townsend does minimal food preparation, household chores, shopping, banking/bill paying and has adequate personal hygiene.  Tr. 399.

On February 17, 2010, Dr. J. Joseph Konieczny, Ph.D., conducted a consultative psychiatric evaluation of Townsend.  Tr. 327-330.  Townsend indicated to Dr. Konieczny that he dropped out of school in the 10th grade because he couldn't keep up after being put in regular classes.  Tr. 327.   Townsend stated that his longest period of employment was as a laborer for Plastic Pack[3] where he worked for eight months.  Tr. 327.  Townsend told Dr. Konieczny that he left Plastic Pack in 2007 due to his shoulder coming out of place.  Tr. 328.  Dr. Konieczny stated that Townsend was hospitalized for psychiatric reasons on two occasions in 2007.  Tr. 328.  Dr. Konieczny stated that Townsend was subdued but pleasant, cooperative, and he adequately

---

[3] The records provide an inconsistent spelling of Townsend's previous employer as either "Plastipak" or "Plastic Pack."  Tr. 48, 327.

participated with the evaluation.  Tr. 329.  He also found Townsend's grooming adequate and

hygiene fair.  Tr. 329.  Dr. Konieczny stated there were no indications of paranoid thinking but

Townsend acknowledged a history of auditory hallucinations.  Tr. 329.  Dr. Konieczny opined

that Townsend suffers from Anti-Social Personality Disorder but some consideration should be

given to a diagnosis of Psychotic Disorder, Depressive Disorder, and Borderline Intellectual

Functioning.  Tr. 330.  Dr. Konieczny further opined that Townsend's ability to concentrate,

attend to tasks, understand and follow directions showed no signs of impairment.  Tr. 330.  Dr.

Konieczny noted that Townsend's ability to relate to others and deal with the general public was

markedly impaired and his current insight seems poor.  Tr. 330.

On February 26, 2010, Jennifer Swain, Psy.D. State agency consultant reviewed the

evidence of record and opined that Townsend has moderate limitations in his ability to:

understand and remember detailed instructions, carry out details instructions, work in

coordination with or proximity to others without being distracted by them, accept instructions

and respond appropriately to criticism from supervisors, get along with coworkers or peers

without distracting them or exhibiting behavioral extremes, maintain socially appropriate

behavior and to adhere to basic standards of neatness and cleanliness, respond appropriately to

changes in the work setting, and set realistic goals or make plans independently of others.  Tr.

346-347.  She also found him markedly impaired in his ability to interact appropriately with the

general public.  Id.

On March 2, 2010, Townsend was referred to Dr. Gregory Noveske, M.D., for an initial

pharmacologic evaluation due to concerns about his hallucinations.  Tr. 602.  In the evaluation

Dr. Noveske found Townsend to be appropriately dressed and quite anxious.  Tr 602.  Dr.

Noveske stated that Townsend admitted to visual and auditory hallucinations but there was no

evidence of organic brain syndrome, homicidal or suicidal rumination, broadcasting or ideas of reference,[4] and no form of delusions except for paranoia at times.  Tr. 602.  Dr. Noveske found Townsend to be of average intelligence.  Tr. 602.  Dr. Noveske stated that Townsend was on no medication and had not been treated previously for his psychiatric condition.  Tr. 602.  Dr. Noveske diagnosed Townsend as Paranoid Schizophrenic and started him on Abilify.  Tr. 603.

On March 30, 2010, Townsend presented to Dr. Noveske stating that he is tolerating Abilify well and his hallucinations are essentially gone.  Tr. 604.  Townsend stated that he still has some mild ideas of reference, so Dr. Noveske increased the dosage of Abilify.  Tr. 604.  Townsend reported no new concerns or problems.  Tr. 604.

On April 20, 2010, Dr. Noveske filled out an MSQ opining the Townsend had some ability to remember, understand, and follow directions; marginal ability to maintain attention; poor ability to sustain concentration, persist at tasks, and complete them in a timely fashion; poor ability to adapt and poor ability to react to the pressure of a work setting.  Tr. 353.  Dr. Noveske also opined that Townsend is socially constricted, somewhat unkempt, and has poor insight.  Tr. 352.

On April 26, 2010, Vicki Warren Ph.D., reviewed the evidence on behalf of the State agency and completed a Psychiatric Review Technique and Mental Residual Functional Capacity assessment.  Tr. 355-372.  She opined that Townsend has moderate limitations in his ability to understand and remember detailed instructions, his ability to carry out details instructions, his ability to maintain attention and concentration for extended periods, his ability to work in

---

[4] Ideas of reference and delusions of reference involve people having a belief or perception that irrelevant, unrelated or innocuous things in the world are referring to them directly or have special personal significance. In their strongest form, they are considered to be a sign of mental illness and form part of a delusional, paranoid or psychotic illness (such as schizophrenia or delusional disorder).
http://dictionarypsychology.com/index.php?a=term&d=Dictionary+of+psychology&t=Ideas+of+reference#ixzz2uYfTXRg2 (Last accessed 2/27/14).

coordination with or proximity to others without being distracted by them, his ability to accept instructions and respond appropriately to criticism from supervisors, his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, his ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, and his ability to set realistic goals or make plans independently of others.  Tr. 369-370.  Dr. Warren also found Townsend markedly limited in his ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, his ability to interact appropriately with the general public, and his ability to respond appropriately to changes in the work setting.  Id.   She concluded that Townsend did not appear to have the ability to perform the routine demands of work.  Id.

### D.  Testimonial Evidence

#### 1.     Townsend's Testimony

At the administrative hearing, Townsend was represented by counsel and testified that he previously attended special education classes but was put in regular classes after ninth grade and couldn't keep up.  Tr. 55-56.  Townsend further testified that he was last employed at Plastic Pack two years prior to the hearing.  Tr. 48.  Townsend stated he worked "on and off there for about two-three years…"  Tr. 48.  Townsend testified that he was fired from Plastic Pack due to missing too many days because his shoulder was coming out of place.  Tr. 51.  Townsend stated he missed four weeks due to his shoulder.   Tr. 51.

Townsend further testified that he was taking Abilify but hadn't taken it in four to five months.  Tr. 55.  Townsend also stated that he stopped going to counseling at Catholic Charities two months prior to the hearing because he was struggling for bus fare to get around.  Tr. 57.

## 2.    Vocational Expert's Testimony

Vocational Expert Thomas Nimberger ("VE"), testified at the hearing.  Tr. 65-71.  The VE testified that Townsend's only past relevant work was as a packager and was performed as light and unskilled.  Tr. 66.   The ALJ then asked the VE whether there were any jobs in the national or regional economy for a hypothetical individual of Townsend's age, education, and work experience, who is able to occasionally lift 50 pounds and frequently lift 25 pounds, is able to stand and walk six hours of an eight-hour work day, would have unlimited push and pull ability, can never climb ladders, ropes, and scaffolds, whose reaching would be limited to occasional with the right upper extremity, and who can perform simple, routine tasks in an environment without strict production quotas, frequently unexplained changes, or frequent interaction with co-workers or the general public.  Tr. 66-67.   The VE testified that such a hypothetical individual could not perform Townsend's past relevant work but that such an individual could perform the following work:  bakery worker (72,000 jobs nationally, 480 jobs locally); agricultural sorter (68,000 jobs nationally, 390 jobs locally), and gate guard (72,000 jobs nationally, 450 jobs locally).  Tr. 67-68.

The ALJ then asked the VE to assume a second hypothetical individual of Townsend's

same age, education, and past work experience who is able to occasionally lift 20 pounds and frequently lift 10 pounds, is able to stand and walk six hours of an eight-hour work day, is able to sit for six hours of an eight-hour workday, would have unlimited push and pull.  In addition, this hypothetical individual can frequently climb ramps and stairs, can never climb ladders, ropes, or scaffolds, can frequently balance, stoop, kneel, and crawl, can occasionally crouch.  And with the right upper extremity, reaching in all directions including overhead would be occasional due to recurrent right shoulder dislocation.  This hypothetical individual must avoid concentrated exposure to extreme could and avoid concentrated exposure to hazards, such as machinery and heights.  In addition, this hypothetical individual can perform simple, routine tasks in an environment without strict production quotas, frequent unexplained changes or frequent interaction with co-workers or the general public.

8

Tr. 68.  The ALJ asked if this second hypothetical individual could perform the jobs previously identified, i.e., bakery worker, agricultural sorter, and gate guard.  Tr. 68.  The VE stated that the second hypothetical individual could also perform work as a bakery worker, agricultural sorter, and gate guard.  Tr. 69.

The ALJ then added an additional limitation to the second hypothetical stating that the individual "would be off task approximately 20 percent of the time due to problems with paranoia and difficulty with the paranoid schizophrenia."  Tr. 69.  The VE responded that there would be no work for such an individual.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1.    If the claimant is doing substantial gainful activity, he is not disabled.

9

2.      If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.      If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.      If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.      If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920;[5] *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987).  Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the Commissioner at Step Five to establish whether the claimant has the vocational factors to perform work available in the national economy.  *Id.*

## IV. The ALJ's Decision

In her August 22, 2011, decision, the ALJ made the following findings:

1.      The claimant has not engaged in substantial gainful activity since August 17, 2009, the application date.  Tr. 23.

---

[5] The DIB and SSI regulations cited herein are generally identical.  Accordingly, for convenience, further citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 et seq.  The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq., corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds to 20 C.F.R. § 416.920).

2.   The claimant has the following severe impairments:  right shoulder dislocation, learning disorder, personality disorder, paranoid schizophrenia, and substance addiction disorder.  Tr. 23.

3.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.[6]  Tr. 23.

4.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that he can lift and carry 20 pounds occasionally and 10 pounds frequently, sit, stand, and walk six hours out of an eight-hour workday, and is unlimited in his ability to push and pull. He can frequently climb ramps and stairs and never climb ladders, ropes and scaffolds, frequently balance, stoop, kneel and crawl, occasionally crouch, and occasionally reach overhead and in all directions due to recurrent right shoulder dislocation.   The claimant must avoid concentrated exposure to extreme cold, hazards including machinery and heights.   The claimant can perform simple, routine tasks in an environment without strict production quotas, frequent unexplained changes or frequent interaction with coworkers and the public.  Tr. 25.

5.   The claimant is unable to perform any past relevant work.  Tr. 31.

6.   The claimant was…24 years old, which is defined as a younger individual age 18-49, on the date the application was filed.  Tr. 31.

7.   The claimant has a limited education and is able to communicate in English. Tr. 31.

8.   Transferability of job skills is not an issue because claimant's past relevant work is unskilled. Tr. 31.

9.   Considering claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform. Tr. 31.

10.   The claimant has not been under a disability, as defined in the Social Security Act, since August 17, 2009, through the date of this decision. Tr. 32.

---

[6] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525.

The ALJ's decision became the final decision of the Acting Commissioner when the Appeals Council denied Townsend's request for review of the ALJ decision on November 15, 2012. Tr. 1.

## V. Parties' Arguments

### A.     Plaintiff's Arguments

Plaintiff argues that the ALJ erred in failing to properly evaluate the opinions of Townsend's treating psychiatrist and therapist and improperly gave the greatest weight to the "least qualified" assessor. Doc. 16, p.1. Plaintiff also contends that the ALJ failed to properly evaluate the application of listing of impairments 12.05(C). Id.

### B.     Defendant's Arguments

In response, the Commissioner argues that substantial evidence supports the ALJ's decision that Townsend was not disabled under the Social Security Act. Doc. 17, p. 1.

## VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Secretary of Health and Human Services,* 889 F.2d 679, 681 (6th Cir.1989) (per curiam) (citations omitted)). A court "may not try the case *de novo*,

nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### A.  The ALJ gave appropriate weight to treating sources

Townsend argues that the ALJ inappropriately gave "little" or "limited" weight to his treating psychiatrist, Dr. Gregory Noveske, M.D., and his treating therapist, Laura Diffendal PCC-S, while giving "significant weight" to a non-treating State reviewing physician.  Doc. 16, p. 12.  The Commissioner argues that neither Ms. Diffendal nor Dr. Noveske were treating sources and, therefore, the ALJ was not required to give their opinions any particular weight or deference.  Doc. 17, p.11.

Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).  If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6). The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). On the other hand, opinions from nontreating and nonexamining sources are never assessed for "controlling weight." The Commissioner instead

13

weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013), reh'g denied (May 2, 2013).

Although Townsend characterizes Ms. Diffendal as a treating source, that characterization is incorrect.  Ms. Diffendal is a therapist, which is not an acceptable medical source under the regulations.  See 20 C.F.R. §416.913 (defining acceptable medical sources). Accordingly, her opinion is not entitled to any particular weight.  *Hickox v. Comm'r of Soc. Sec.*, 1:09-CV-343, 2010 WL 3385528 (W.D. Mich. Aug. 2, 2010) *report and recommendation adopted,* 1:09-CV-343, 2010 WL 3385525 (W.D. Mich. Aug. 25, 2010) and *report and recommendation adopted,* 1:09-CV-343, 2011 WL 6000829 (W.D. Mich. Nov. 30, 2011).   The ALJ gave Ms. Diffendal's opinion limited weight stating that "the objective evidence does not support the severity of symptoms reported by the claimant's therapist.  The evidence establishes that the claimant never previously participated in mental health services, and once he started taking medication, specifically Abilify, his symptoms drastically improved."  Tr. 27.   The ALJ found Ms. Diffendal's opinion was not consistent with other evidence and not supportable by objective evidence.  Although the ALJ did not state that length of treatment was an issue with Ms. Diffendal, it is clear that her February 4, 2010, opinion was just two weeks after her initial evaluation with Townsend on January 21, 2010.  Based on the above, the ALJ appropriately weighed the opinion of Ms. Diffendal.

Townsend also characterizes Dr. Noveske as a treating physician.  Although Dr. Noveske is an acceptable medical source, the ALJ appropriately questioned whether he could be considered a treating source considering his limited treatment history with Townsend.  Tr. 27.  A

treating physician is "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you with medical treatment or evaluation and *who has, or has had, an ongoing treatment relationship with you.*" 20 C.F.R. § 404.1502 (emphasis added); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006).  The treatment records only reflect 2-3 visits with Dr. Noveske, all occurring in March 2010.[7]  Tr. 352, 602-604.  Thus, Dr. Noveske was not in a position "to provide a detailed, longitudinal picture of [Townsend's] medical impairment(s)." *Id.* § 404.1527(d)(2). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1001 (6th Cir. 2011) (citing *Barker v. Shalala,* 40 F.3d 789, 794 (6th Cir.1994)). As the ALJ did not consider Dr. Noveske a treating source, he was not required to give his opinion controlling weight.

However, even if Dr. Noveske were considered a treating source, the ALJ appropriately discounted his opinion.  The ALJ did not find Dr. Noveske's opinion consistent with other substantial evidence in the record, mainly Townsend's response to Abilify and Dr. Noveske's March 2, 2010 treatment notes.  20 C.F.R. § 404.1527(d)(2).  Accordingly, Dr. Noveske's opinion was not given controlling weight.  Id.

Dr. Noveske diagnosed Townsend with paranoid schizophrenia, for which he prescribed Abilify.  Tr. 603.  In the MSQ, Dr. Noveske opined that Townsend had "some ability to remember, understand and follow directions and marginal ability to maintain attention.  His ability to sustain concentration is poor.  He is socially constricted, has a poor ability to adapt, and

---

[7] The record contains treatment notes from Dr. Noveske on March 2, 2010, and March 30, 2010.  However, the March 30, 2010, treatment notes also indicate that Dr. Noveske saw Townsend on one other occasion the week prior ("[Townsend] has stopped in last week when I saw him briefly when he was late for an appointment.").  Tr. 604.

reacts poorly to pressure." Tr. 353.  The ALJ gave little weight to this opinion but provided "good reasons" for discounting the opinion.

First, in considering "the length of the treatment relationship and the frequency of examination," 20 C.F.R. § 404.1527(d)(2), the ALJ noted that Dr. Noveske saw Townsend between March 2, 2010, and March 30, 2010, and did not have a "significant treating relationship" with him at the point of the assessment.  Tr. 27.   Thus, Dr. Noveske was not in a position "to provide a detailed, longitudinal picture of [Townsend's] medical impairment(s)." *Id.* § 404.1527(d)(2). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1001 (6th Cir. 2011) (citing *Barker v. Shalala,* 40 F.3d 789, 794 (6th Cir.1994)). Accordingly, the brevity of Dr. Noveske's treating relationship with Townsend supports the ALJ's decision to discount his opinion.  *Id.*

Second, in considering the "supportability of the opinion [and] consistency of the opinion with the record as a whole," 20 C.F.R. § 404.1527(d)(2), the ALJ noted inconsistencies between Dr. Noveske's opinion and his March 2, 2010, initial consultation and the claimant's response to Abilify.  Tr. 27.  The initial consultation is somewhat inconsistent with Dr. Noveske's April 20, 2014, MSQ.  Dr. Noveske states in the questionnaire that Townsend is "somewhat unkempt" and his "insight is poor" but the treatment notes reflect that Townsend was "appropriately dressed" and "had some insight into his problems (sic) felt to be limited."  Tr. 352-353, 602.  As to Townsend's progress with Abilify, Dr. Noveske reported that, as of April 6, 2010, Townsend demonstrated significant progress on Abilify and reported that his hallucinations were

"essentially gone."[8]  Tr. 27, 604.  Plaintiff argues that a "single treatment note" stating that Townsend responded well to Abilify cannot be regarded as sufficient evidence of substantial medical improvement.  Doc. 16, p. 14.  However, there are few treatment notes from Dr. Noveske and no treatment notes after April 6, 2010, that contradict or call into question Dr. Noveske's finding that Townsend was making significant progress on Abilify.  Accordingly, problems with the "supportability of the opinion [and] consistency of the opinion with the record as a whole" also support the ALJ's decision to discount Dr. Noveske's opinion.  *Id.*  While the ALJ gave little weight to Dr. Noveske's opinion, the ALJ's reasons are supported by the record and are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

Finally, Townsend argues that the ALJ inappropriately allocated the most evidentiary weight to Dr. Hoyle.  Doc. 16, p. 16.  The ALJ gave the opinion of Dr. Hoyle, a reviewing State agency psychologist, significant weight stating that Dr. Hoyle's opinion was consistent with evidence in the record.  Tr. 30.  Dr. Hoyle opined that Townsend had mild restrictions in daily living and moderate difficulty maintaining concentration, persistence, or pace.  Tr. 30.  Dr. Hoyle opined that Townsend retains the ability to perform simple, routine tasks in a stable environment with limited social interaction.  Id.  Dr. Hoyle did not consider Townsend's statements credible due to malingering during the IQ test with Dr. Wax.  Id.  Dr. Swain, another State agency reviewing psychologist similarly found Townsend's statements not fully credible based on inconsistent statements he made in the record.  Tr. 30.  The opinions of state agency psychologists are entitled to consideration under the same regulations used to assess other

---

[8] Townsend reported some "mild ideas of reference" at the appointment and so Dr. Noveske decided to increase his Abilify.  Tr. 604.

medical opinions, and may be entitled to greater weight than the opinions of treating or examining sources.  20 C.F.R. § 416.927(e); SSR 96-6p; *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 651 (6th Cir. 2006) (en banc) (affirming ALJ's decision adopting reviewing physician's opinion over treating physician's opinion).

"The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir.2001) (citation omitted). "This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Id.* at 773 (citations omitted).  Judicial review is limited to "whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied."*Elam ex rel. Golay v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir.2003). *Castello v.Comm'r of Soc. Sec.*, 5:09 CV 2569, 2011 WL 610590 (N.D. Ohio Jan. 10, 2011) *report and recommendation adopted sub nom. Castello ex rel. Castello v. Comm'r of Soc. Sec.*, 5:09 CV 2569, 2011 WL 610138 (N.D. Ohio Feb. 10, 2011).

The ALJ's conclusion that Plaintiff does not have disabling limitations is supported by the opinions of Dr. Wax, Dr. Hoyle, and Dr. Swain. This conclusion is further supported by Dr. Noveske's treatment notes stating that Townsend's symptoms were largely controlled by Abilify. *See Warford v. Bowen*, 875 F.2d 671, 673 (8th Cir. 1989) ("A medical condition that can be controlled by treatment is not disabling.")  Accordingly, Townsend's argument that "remand is necessary to allow for an adequate evaluation" of the medical opinion evidence is without merit.

**B. Substantial evidence supports the ALJ's determination that Townsend does not meet Listing 12.05(C)**

Townsend argues that reversal is appropriate because he satisfies Listing 12.05(C) for mental retardation. Doc. 16, pp. 18-22. The Commissioner argues that Townsend never alleged mental retardation with the Social Security Administration and the record does not support that he satisfies Listing 12.05(C). Doc. 17, pp. 15-16.

The ALJ clearly considered the evidence and applied it to diagnostic criteria under Listing 12.00. Tr. 13-14. The ALJ specifically considered listing 12.02, 12.03, 12.08, and 12.09. Tr. 23. The ALJ did not specifically refer to Listing 12.05(C) under his Step Three analysis but the ALJ's decision, when viewed as a whole, contains a thorough discussion of the evidence including Townsend's physical and mental impairments and his daily activities. Tr. 23-32. This discussion is sufficient to allow for meaningful judicial review. *See Reynolds v. Comm'r of Soc. Sec.,* 424 Fed. Appx. 411, 416 (6th Cir. April 1, 2011)(determining that an evaluation of the evidence and explained conclusions that allow a court to engage in meaningful judicial review are necessary components of an ALJ's Step Three analysis); see also *Hufstetler v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 64298, *26-29 (N.D. Ohio June 17, 2011).

At the third step in the disability evaluation process, a claimant will be found disabled if his impairment meets or equals one of the listings in the Listing of Impairments. *20* C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The claimant bears the burden of proving every element of the Listing. *King v. Sec'y Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir.1986). Listing 12.05 relates to mental retardation. To qualify as disabled under that Listing, a claimant needs to satisfy both the diagnostic description in the introductory paragraph of the Listing 12.05 and one of the four sets of criteria found in Subparts A through D. 20 C.F.R. § 404.1525(c)(3); *Foster v. Halter*, 279 F.3d 348, 354-55 (6th Cir. 2001). The diagnostic description is as follows:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The additional Subpart C criteria are:

> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Part 404, Subpt. P, App. 1, Listing §12.05C (emphasis added).

On his application for disability benefits and at the hearing, Townsend alleged a learning disability.  Id.; Tr. 44, 157, 187.  Townsend did not allege mental retardation.  In fact, no medical source has diagnosed Townsend as mentally retarded.  Instead, Townsend claims that his verbal IQ score of 68 satisfies the Listing 12.05(C).  When tested by Dr. Wax in 2007, Townsend had IQ scores of 68 verbal, 77 performance, and 70 full scale on the Wechsler Adult Intelligence Scale (3d ed.) ("WAIS-III"). Yet, it is not enough for a claimant to point to one IQ score below 71; the claimant must also satisfy the "diagnostic description" of mental retardation in Listing 12.05. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir.2001). Furthermore, a claimant's score must be *valid*.  20 C.F.R. Part 404, Subpt. P, App. 1, Listing §12.05C (emphasis added).

In this case, Dr. Wax specifically stated Townsend's WAIS-III scores were "suspect" and that he believed "malingering" was present. Tr. 239.  Dr. Wax opined,

> Overall the clinical impression of [Townsend's] cognitive functioning was of someone operating in the low average to average range of intelligence.  This is much higher than his WAIS-III score, which was in the borderline range.  This individual, though, did not try his hardest on the WAIS-III, and the WAIS-III scores are suspect…He was in special education classes and school records should be obtained.  A learning disorder is suspected.

Tr. 238.  With regard to the Wide Range Achievement Test ("WRAT-4"), Dr. Wax stated,

> This test is suspect. This individual stated he has difficulty with academic skills. He obtained a 3rd grade comprehension level, but obtained less than a Kindergarten level sight vocabulary. Though this individual could read and comprehend at the 3rd grade

> level, he could not even identify letters of the alphabet. This individual obtained a
> Kindergarten level arithmetic score, though during the clinical interview, he could add by
> 3s and subtract by 7s, though he added and subtracted slowly on his fingers. This
> discrepancy suggests malingering on the WRAT-4.

Tr. 240.  Townsend's 2007 IQ test results are invalid due to malingering.  *Lipford v. Sec'y of Health & Human Servs.*, 762 F.2d 1009 (6th Cir. 1985) (Claimant's motivation was poor for test validation purposes [and] the Secretary was entitled to discount the WAIS scores as invalid); *Shepherd v. Sullivan*, 889 F.2d 1088 (6th Cir. 1989) ("IQ test was invalid due to bad faith and malingering").  Accordingly, there is substantial evidence to support the Secretary's finding that the claimant has not met the requirements of § 12.05(C).  *Id.*

Townsend also argues that his 1995 verbal IQ score of 69 satisfies listing 12.05(C).  However, Townsend's argument is unpersuasive.  Townsend was 10 years old at that time the test score was obtained.  Tr. 421.  Thus, that test score is insufficient to establish that he meets Listing 12.05(C).  *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 112.00(d)(10) (IQ test results obtained between ages seven and sixteen should be considered current for two years only when the IQ is above 40);  *Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 126 (6th Cir. 2003) (indicating that intelligence test results obtained between the ages of seven and sixteen are considered to be current for only two years if the score is forty or above).

As Townsend does not have a "*valid* verbal, performance, or full scale IQ of 60 through 70" his argument that the ALJ erred in failing to consider Listing 12.05(C) is without merit and, therefore, substantial evidence supports the ALJ's decision that Townsend does not meet Listing 12.05(C).

### VII.  Conclusion

For the reasons set forth herein, the Court **AFFIRMS** the Commissioner's decision.


Dated:  February 28, 2014

_____
Kathleen B. Burke
United States Magistrate Judge